## THORNDIKE *vs.* GODFREY.

Implied ratifications extend only to such acts of the agent as are known to the principal at the time.

This was an action of *assumpsit* on a promissory note, made by the defendant, payable to *Seward Porter*, and by him indorsed to the plaintiff ; and it came before this Court upon exceptions taken to the opinion of *Perham* J. before whom it was tried in the Court below.

It appeared that the plaintiff, being owner of the steam boat *Maine*, duly constituted *Porter* his attorney, " to sign certificates " entitling the holders to shares of the net proceeds and income " of the" boat, " so long as the owners of such shares shall on de- " mand pay their proportion of proper repairs and expenses; and " to agree that said boat shall be employed in such manner as " may from time to time be directed by the owners of a majority " in interest of the shares in the profits of said boat; and that " dividends of the profits shall be made annually, at such time as " the owners of a majority in interest of the profits of the said " boat shall direct." Under this power *Porter* gave certificates of shares to the defendant and several others at *Bangor*, taking their notes payable to himself or order in ninety days; which period was fixed to give him time to ascertain if other shares could be sold at *Castine, Belfast*, and other places on the *Penobscot* river, so as to insure the establishment of a line of steam boats to *Bangor*. If this could not be effected, it was agreed that the notes should be given up, and the enterprize abandoned. And the boat did cease to go to *Bangor* before the notes became due. The power of attorney was exhibited, at the time, to the defendant and others who took shares in the boat, and a copy of it left with one of them, for the use of all concerned.

The Judge was of opinion that the plaintiff, by receiving the note, ratified *Porter's* agreement concerning it; and that the facts constituted a good defence to the action. To which the plaintiff excepted.

*Gilman*, for the plaintiff, contended that the note having been regularly indorsed to the plaintiff before its maturity, the matter alleged in defence was not admissible to avoid it. *Adams v. McIntier* 1 *Mass.* 69. *Richards v. Kilham* 10 *Mass.* 239. *Revere v. Leonard* 1 *Mass.* 91. *Townsend v. Weld* 8 *Mass.* 146. *Murray v. Hatch* 6 *Mass.* 477. *Hunt v. Adams* 7 *Mass.* 518. But if it were admissible, it did not constitute a good defence; because the defendant, having the power of attorney in his hands, must have perceived that the agent exceeded his authority in agreeing to the condition; no knowledge of which is proved ever to have been communicated to the plaintiff. And at all events the defendant could not rescind his part of the contract, without restoring the certificate of stock which he received; and which in this case he has not done. He seeks to avoid the note, while he still retains the consideration for which it was given, and is still entitled to his share of the profits of the business.

*T. A. Hill*, for the defendant, argued that the authority to annex such a condition to the contract, though not expressly given in the letter of attorney, yet was necessarily incident to the nature of the transaction. But if *Porter* did exceed his authority, the acceptance of the note, and the bringing of this action, amounted to a ratification of his doings; the relation of principal and agent between them, and the taking of the note for the plaintiff's use, giving to the transfer of this note a character very different from that of indorsements in the ordinary course of business. If the plaintiff was at liberty to repudiate the contract, he must do it *in toto*. But electing to accept it, he takes the note and the condition together.

Mellen C. J. delivered the opinion of the Court.

As the note in question was given to *Porter* for the plaintiff's use, and then indorsed to him, we apprehend the defendant is en-

titled in this action to the same defence, by way of impeaching the consideration, as though the note had been made payable to the plaintiff himself. And if it had been, and the plaintiff had transacted all the business in person in relation to the certificate and note, and the conditions on which it is said the note was given, we should not be prepared to say that the defence might not be maintained. But as this was not the case, we must examine further. Here the first inquiry is, what were the powers delegated by the plaintiff to *Porter*, by the letter of attorney? This question must be answered by an examination of it. It was exhibited to the defendant at the time the note was given and a copy of it left for the benefit of all concerned.

By this letter of attorney it appears that *Porter* was authorized;—1. To sign certificates entitling the holders to shares of the neat proceeds and income of the steam boat *Maine*, for a certain conditional term of time;—2. To agree as to the manner in which the boat should be employed; i. e. as a majority in interest in the shares should direct; and 3d. That dividends should be made annually at such time as a majority in interest should direct. These were all the powers with which he was clothed by the letter of attorney; and as these were given expressly, in writing, and under seal, all implied authority is out of the question. *Porter* gave a certificate of a share to the defendant at the price of $50, and in payment for it, received the note declared on; and then, according to the testimony of the defendant's witness, he agreed, though the note was absolute on the face of it, that it should be considered void and should be given up, if certain anticipated events should not take place, and certain conditions should not be complied with; and the exceptions state that those events have not taken place, nor those conditions been performed. It is a principle of law perfectly clear, that when an attorney acts beyond the limits of the power given to him, the constituent, as to this excess, is not bound; and it would be mischievous and unjust if he should be; more especially in those cases where he who deals with such attorney has full knowledge of the extent of his delegated powers. Now in the present case, when *Porter* had given the certificate thus conveying valuable rights to the defendant, which he now holds and may enjoy, and received the note in ques-

tion for the price of the certificate, he had no power to make any conditions that the purchase money should not be demandable, except in certain specified events. In this particular he undertook to waive or destroy the rights of his constituent, without any power so to do. This principle is too plain to need authorities or illustration.

But it is said that *Thorndike* has ratified the doings of *Porter* even if he has exceeded his authority. If he has, the effect is the same as if a previous and sufficient authority had been given. But where is the proof of this ratification? It is contended that the plaintiff, by accepting the note and pursuing the present action, has given decisive evidence of his approbation of his attorney's conduct; and in this manner has ratified it. Still there is not a particle of proof that *Thorndike*, when he received the note of *Porter*, knew that he, by any of his verbal conditions and arrangements, had destroyed the effect of the notes and rendered it irrecoverable, as the counsel for the defendant contends he has done. We can never consider consent and ratification as implied, in those cases where there is not any knowledge of the facts, to which it is said the consent and ratification extend. This would be an effect without a cause. Had the defendant, when he gave the note, insisted that the before mentioned conditions should form a part of it; and had they been inserted in the note accordingly ; then the acceptance of it by *Thorndike* would have been a distinct ratification of the power of *Porter* to make those conditions and arrangements, although beyond his legitimate authority under the letter of attorney. But on the facts before us, we are of opinion that the instructions of the Judge who presided at the trial in the Court of Common Pleas were not correct. Of course, the exceptions are sustained ; the verdict is set aside, and a new trial must be had at the bar of this Court.